UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------x
KENNETH MOORE,

                      Plaintiff,

    -against-

ANDRA BROADY, individual and official capacity;
SENIOR PAROLE OFFICER M. FLEISCHMAN,
individual and official capacity; SENIOR PAROLE
OFFICER BENJAMIN, individual and official
capacity; and PAROLE OFFICER A. WILLIAMS,
individual and official capacity,

                      Defendants.
----------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 0 6 2010 ★
BROOKLYN OFFICE

MEMORANDUM AND ORDER

10-CV-3250 (ENV)

**VITALIANO, D.J.**

On July 15, 2010, plaintiff Kenneth Moore, who was then incarcerated at Franklin Correctional Facility, filed this pro se action pursuant to 42 U.S.C. § 1983, along with an order to show cause seeking injunctive relief and a request for the appointment of pro bono counsel. The Court grants plaintiff's request to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. The order to show cause for a preliminary injunction and the request for the appointment of counsel are denied. Andra Broady is dismissed as a defendant, but plaintiff is granted leave to submit an amended complaint within thirty (30) days of the date of this Order.

## BACKGROUND

According to the complaint, plaintiff was released on parole from a state correctional institution on November 20, 2009. (Compl. ¶ 3.) Plaintiff was initially assigned to the supervision of defendant parole officer Williams. Among the conditions of his parole, Moore was subject to a 9 p.m. to 7 a.m. curfew and was required to attend an outpatient substance abuse treatment program three times per week. (Compl. ¶ 8; Ex. 6.) He also agreed to the following

1

condition: "I will fully comply with the instructions of my Parole Officer and obey such special additional written conditions as he or she, a Member of the Board of Parole or an authorized representative of the Division of Parole, may impose." (Ex. 6, ¶ 13.)

Plaintiff initially requested to reside with either his father or his mother, but these requests were denied, because his father owns a gun and his mother lives at an address where plaintiff once had an order of protection against him. Division of Parole policies prohibit placement of parolees in such circumstances. (OSC at 3-4.). On or about December 1, 2009, he commenced residency at 1109 President Street in Brooklyn, New York, at a facility operated by defendant Andra Broady and Genesis Transitional Housing Ministries. (Compl. ¶¶ 4-5.) Broady conditioned residency on attendance at Bible study three times per week and Sunday church services two times per month. (Compl. ¶ 7.)

On December 28, 2009, the house manager at 1109 President Street informed all tenants that they were required to attend church services on December 31, 2009. Plaintiff initially refused to attend, citing, among other reasons, the curfew imposed by the conditions of his parole. Although plaintiff eventually sought the permission of his parole officer and attended the services, the incident led to a dispute with defendant Broady. (Compl. ¶¶ 9-12.) "Defendant Broady then told the plaintiff that he was going to call the police and have him thrown out of his so called housing program, 1109, for insubordination." (Compl. ¶ 12.) "Upon hearing that threat [ ] plaintiff immediately left church, traveled back to Brooklyn, and went directly to a police precinct which was situated closest to 1109." (Compl. ¶ 13.) At the police station, plaintiff sought advice about his rights as a tenant, should Broady carry out his threat to remove him from the residence. (Compl. ¶¶ 13-14.) Plaintiff did not give his name or file a report. (Compl. ¶ 15.) He left a telephone message for parole officer Williams that same morning and

2

"also told defendant Williams about his innocent police contact, and the reason for it during his next regularly scheduled office visit." (Compl. ¶ 16.)

On or about January 11, 2010, plaintiff went to the Brooklyn Housing Court with the intention of commencing a pre-emptive court action against Broady, but was told that he did not have standing to begin an action unless he was illegally evicted or constructively evicted. (Compl. ¶ 18.)

On January 19, 2010, plaintiff began working as a case manager for a men's shelter operated by a non-profit organization. (Compl. ¶ 19; Ex. 7.) Foreseeing difficulty in meeting the obligations of the religious services on top of the demands of his job, the mandatory treatment program and the nightly curfew, plaintiff sought a modification of Broady's attendance requirements. (Compl. ¶ 20.) Broady, through his house manager, refused the request and told plaintiff that failure to attend would be grounds for discharge from 1109 President Street. (Compl. ¶ 21.) Thereafter, plaintiff sought the assistance of Tanya Kessler, a staff attorney at MFY Legal Services. (Compl. ¶ 22.) Kessler sent a letter to Broady outlining plaintiff's rights as a tenant under the New York City Unlawful Eviction Law, N.Y. Administrative Code § 26-521. (Ex. 8.) Thereafter, the relationship between plaintiff and Broady further deteriorated. Plaintiff began to experience symptoms of exhaustion and anxiety. (Compl. ¶ 24.) Plaintiff believes that Broady began communicating with plaintiff's parole officers as part of his attempts to have plaintiff removed from the residence. (Compl. ¶ 25.) In particular, plaintiff claims that Broady falsely informed the parole officers that plaintiff had tuberculosis. (Compl. ¶¶ 25, 27.)

On February 24, 2010, plaintiff's parole supervision was transferred from defendant Williams. Plaintiff alleges that Williams failed to document many of the reports plaintiff had made and permissions Williams had given, including the report about the police contact on

3

December 31, 2009, his employment status, and having given him verbal permission to have a driver's license. (Compl. ¶ 29.) Plaintiff alleges that Williams made false reports about him in retaliation for attorney Kessler's communication with Williams's supervisor about her supervision of plaintiff. (Id.)

On March 17, 2010, plaintiff had another disagreement at his residence over attendance at Bible study, and plaintiff again called the police. Officers came to the residence and informed a floor captain that they could not force plaintiff to go to Bible study or lock him out of his residence without a court order. The next day, Moore contacted parole officer Serrano to report the police contact. (Compl. ¶¶ 30-31.)

Plaintiff attended his regularly scheduled parole office visit on March 24, 2010. He learned that Broady had informed parole officer Fleischman, by telephone that morning, that plaintiff was not attending all of the mandatory religious services. (Compl. ¶ 32.) "During that visit defendant Fleischman ordered [Moore] 'not to return to 1109.'" (Id.) "Plaintiff then explained to Fleischman that her order 'not to return to 1109' was tantamount to an eviction without the benefit of having a Housing Court hearing." (Compl. ¶ 33.) Fleischman asked plaintiff to sign a parole special condition form specifying that he must vacate the residence, which plaintiff refused to sign. Thereafter, Fleischman ordered that plaintiff be taken into custody. (Compl. ¶ 34.) "As a result of suddenly being taken into custody the plaintiff experienced an involuntary bodily reaction. In essence the plaintiff fainted. The plaintiff had suffered an emotional and physical breakdown. . . ." (Compl. ¶ 37.) "When the plaintiff was able to speake [sic] he asked defendant Fleischman to take him to the hospital. She refused that request and instead ordered her subordinates to pick up the plaintiff and transport him to Rikers Island, by which time he had recovered enough to move under his own power." (Compl. ¶ 37.)

4

Subsequently, plaintiff was charged with ten parole violations, including carrying a driver's license without permission, violation of his curfew on March 20, 2010, failing to notify parole officers of his police contact on December 31, 2009, refusing to follow his parole officer's instruction to leave his residence, and refusing to stand up when he collapsed and resisting arrest in the office on March 24, 2010. (Compl. ¶¶ 34, 36; Exhibit 5.)

Plaintiff appeared at a preliminary hearing on April 6, 2010. He attempted to explain the background of the landlord-tenant dispute, but was not permitted to do so. "Defendant Fleischman had elected to proceed on charge 2 only," the charge regarding his possession of a driver's license without permission of his parole officer. (Compl. ¶ 38.) "Probable cause was found in relation to Charge 2 notwithstanding the fact that the plaintiff testified that defendant Williams had given him verbal permission to have a drivers license and that defendant Williams was prone to not thoroughly documenting all that had transpired between herself and the plaintiff." (Id.) Plaintiff had a final parole hearing on May 3, 2010. "[T]he hearing officer did tell the plaintiff that if one of the ten parole violation charges was sustained at a contested final hearing, that he, the plaintiff would receive a prison time assessment which would be significantly more stringent than the three months that was currently being offered. The plaintiff finally realizing that he was talking to an audience who simply didn't want to hear his side of the story decided to cut his already huge losses and pled guilty to Charge 2." (Compl. ¶ 39.)

Plaintiff was returned to state custody on May 7, 2010. He has since suffered from anxiety and depression about his return to custody, despite the "all out effort he had made to live on the straight and narrow." (Compl. ¶ 40.) He was scheduled to be released on August 3, 2010. (OSC; Ex. 1.)

Plaintiff's complaint asserts five causes of action: (1) defendants Fleischman, Williams,

and Benjamin retaliated against him for contacting the police on December 31, 2009 by submitting Charge 5 in the Parole Violation Report; (2) defendants Fleischman and Broady retaliated against him for contacting the police on March 17, 2010 by trying to evict him; (3) defendants Fleischman, Broady, and Benjamin tried to evict him without due process of law; (4) defendant Fleischman failed to provide him with adequate medical care; and (5) defendants Fleischman and Broady misused or abused process by commencing a parole revocation proceeding for the unlawful purpose of evicting him from his housing. Plaintiff seeks $5 million in compensatory and punitive damages, in addition to declaratory and injunctive relief.

In addition to his complaint, plaintiff also filed an Order to Show Cause for Preliminary Injunction and Temporary Restraining Order, in which he asks this Court to (a) enjoin the commencement of any new parole revocation proceeding without the supervision of the federal court; and (b) stay plaintiff's assignment to a residential treatment program following his release from incarceration until after the instant proceedings are completed.

## DISCUSSION

A. Standard of Review

In reviewing the complaint, the Court is mindful that plaintiff is proceeding pro se and that "a document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks and citations omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend the complaint. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

However, 28 U.S.C. § 1915(e)(2)(B) requires a district court to dismiss a case if the court

determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." Moreover, a plaintiff seeking to bring a lawsuit in federal court must establish that the court has subject matter jurisdiction over the action. See, e.g., Rene v. Citibank NA, 32 F. Supp. 2d 539, 541-42 (E.D.N.Y. 1999). "[F]ailure of subject matter jurisdiction is not waiveable and may be raised at any time by a party or by the court sua sponte. If subject matter jurisdiction is lacking, the action must be dismissed." Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700-01 (2d Cir. 2000) (citations omitted). Federal subject matter jurisdiction is available only when the plaintiff's claims arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331, or when plaintiffs and defendants have complete diversity of citizenship and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332.

A plaintiff seeking a preliminary injunction and request for a temporary restraining order must demonstrate: (1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief. See 1-800 Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400, 406 (2d Cir. 2005).

B. Plaintiff's Claims

Construed extremely liberally, plaintiff's complaint may allege claims of malicious prosecution and medical indifference that could be cognizable under 42 U.S.C. § 1983 as violations of plaintiff's constitutional rights.[1] Section 1983 provides a procedure for redressing

---

[1] To the extent that plaintiff asserts claims pertaining to his alleged eviction or attempted eviction by defendants, those claims lack any conceivable basis in fact or law. Plaintiff signed an agreement to abide by the instructions of his parole officer, and was taken into state custody after he nonetheless refused to obey his parole officer's special order to leave his residence. Ultimately, plaintiff pled guilty to an unrelated parole violation charge, and was

7

the deprivation of rights, privileges or immunities secured by the Constitution or laws of the United States. See Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 816, 105 S. Ct. 2427, 2432 (1985)).

*1. State Action Requirement of § 1983*

For a deprivation of a right to be actionable under § 1983, "the conduct complained of must have been committed by a person acting under color of state law," and cannot be applied to the actions of private individuals. Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994). As the Supreme Court has held, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50, 119 S. Ct. 977, 985 (1999) (internal quotation marks omitted). For this reason, all of plaintiff's claims against Andra Broady must be dismissed, as this defendant is a private individual and not a state actor. Although the under-color-of-state-law requirement can be applied to private individuals in certain limited circumstances, such as where the private individual is engaged in a "public function," Jackson v. Metro. Edison Co., 419 U.S. 345, 352, 95 S. Ct. 449, 454 (1974), or performs conduct that is "fairly attributable to the state," Am. Mfrs. Mut. Ins. Co., 526 U.S. at 51, 119 S. Ct. at 986, these exceptions are narrow. The Supreme Court has made clear that "the relevant question is not simply whether a private group is serving a 'public function.' . . . [T]he question is whether the function performed has been 'traditionally the exclusive prerogative of the State.'" Rendell-Baker v. Kohn, 457 U.S. 830, 842, 102 S. Ct. 2764, 2772 (1982) (quoting Jackson, 419 U.S. at 353, 95 S. Ct. at 454). A private entity does not become a state actor merely by performing under a government contract. See Rendell-Baker, 457 U.S. at 841, 102 S. Ct. at 2771 ("Acts of such private contractors do not become acts of the

---

remanded to state custody. There was never any landlord-tenant proceeding against Moore, nor was there an eviction.

government by reason of their significant or even total engagement in performing public contracts."). Moreover, "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State." Jackson, 419 U.S. at 350, 95 S. Ct. at 453.

In this case, plaintiff does not allege that Broady and the housing facility operated by Genesis Transitional Housing Ministries are state actors or are performing any public function. Even if New York City and State agencies regulate such facilities or have contracted with the organization to provide services to former inmates, these connections would not transform the private organization or its owner or employees into state actors for purposes of § 1983 liability. Moreover, the provision of transitional housing to former inmates under parole supervision is not a function that has traditionally been the exclusive prerogative of the state. See, e.g., Rendell-Baker, 457 U.S. at 842, 102 S. Ct. at 2772 ("That a private entity performs a function which serves the public does not make its acts state action."); Young v. Halle Hous. Assoc., L.P., 152 F. Supp. 2d 355, 365 (S.D.N.Y. 2001) ("Although the State of New York has a constitutional interest in providing housing for the needy, the provision of housing, for the poor or for anyone else, has never been the exclusive preserve for the state, but has been left to a regulated, and occasionally subsidized, private marketplace."); Williams v. Crawford, No. 88-cv-0080 (TCP), 1988 WL 52198, at *2 (E.D.N.Y. May 13, 1988) (state regulation and state funding would be insufficient to make a private residential treatment center or its employees state actors under § 1983). As Broady is not a state actor, he cannot be held liable for alleged violations of plaintiff's constitutional rights. Because plaintiff has failed to state a claim against Broady under § 1983 or any other federal law, all such claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

*2. Malicious Prosecution*

Plaintiff's allegations against defendants Fleischman, Williams and Benjamin regarding

9

the commencement of a parole revocation proceeding and the inclusion of Charge #5 in the parole revocation charging document could be construed to suggest a claim for malicious prosecution. To the extent that plaintiff may be seeking to challenge the parole revocation proceeding itself, such a claim would be precluded by Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994).

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

Heck, 512 U.S. at 486-87, 114 S. Ct. at 2372; see Davis v. Cotov, 214 F. Supp. 2d 310, 316 (E.D.N.Y. 2002) (plaintiff's § 1983 claim that his parole violation was based on an improper arrest and his parole revocation the result of inadequate proceedings can only proceed if plaintiff has succeeded in establishing the invalidity of his parole revocation in an appropriate state or federal proceeding). The underlying basis for the holding in Heck is "that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." 512 U.S. at 486, 114 S. Ct. at 2372.

To the extent that plaintiff seeks to challenge only the initial inclusion of Charge #5, plaintiff must establish the following elements: (1) the initiation or continuation of the criminal proceeding against plaintiff; (2) termination of that charge in plaintiff's favor; (3) lack of probable cause for including that charge; and (4) actual malice as motivation for defendants' actions. Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004). A parole revocation hearing that sustains one charge does not _necessarily_ preclude a malicious prosecution claim on other charges that are not sustained. See Janetka v. Dabe, 892 F.2d 187, 190 (2d Cir. 1989) ("[C]ourts

have held that an acquittal satisfies the favorable termination requirement even when there has been a conviction on a related charge, or one arising from the same incident or event."); Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991) (requiring separate analysis for probable cause on related charges, where some charges were sustained and others resolved favorably for defendant).

Here, plaintiff has not established that the prosecution of Charge #5 terminated in his favor, or a lack of probable cause for the initiation of the charge. Plaintiff ultimately pled guilty to Charge #2 only, and his parole was revoked on that basis. To the extent that the other nine charges were dismissed as satisfied by plaintiff's guilty plea, they were not terminated in plaintiff's favor. However, the record does not explicitly reflect the disposition of the other nine charges. Moreover, although the facts stated in the instant complaint appear to provide ample support for a finding of probable cause for the initiation of Charge #5, plaintiff has not specified what basis he has, if any, for disproving the existence of probable cause. Accordingly, the Court will permit plaintiff to amend his complaint to assert this limited malicious prosecution claim.

*3. Inadequate Medical Treatment*

Plaintiff claims that defendant Fleischman failed to provide adequate medical care when plaintiff collapsed in her office and asked to be taken to the hospital. The Fourteenth Amendment protects pretrial detainees from "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976) (establishing the standard for convicted prisoners under the Eighth Amendment); see Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996) (applying this standard to pretrial detainees under the Fourteenth Amendment). In order to meet this standard, a plaintiff must show that he was "actually deprived of adequate medical care" and that "the inadequacy in medical care is sufficiently serious." Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006). He must also show that the official "knows that

inmates [or detainees] face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847, 114 S. Ct. 1970, 1984 (1994). Plaintiff alleges that he "suffered an emotional and physical breakdown" and that defendant Fleischman refused his request to take him to the hospital. (Compl. ¶ 37.) Given that plaintiff further alleges that he subsequently recovered on his own and was able to leave without assistance, the Court is hard-pressed to imagine a reasonable basis for a claim that plaintiff was deprived of adequate medical care. Nonetheless, to the extent that plaintiff seeks to pursue a claim of deliberate indifference to serious medical needs, the Court will permit plaintiff to include such claim in his amended complaint, along with any supporting facts and documentation.

C. Request for Injunctive Relief

Plaintiff's separate request for a preliminary injunction and temporary restraining order adds two additional prayers for relief. He asks the Court to enjoin the Board of Parole from placing him in a residential treatment program when he is released on parole and seeks to impose federal court review of any new parole revocation proceeding against him. There is no constitutional right to be released on parole, and this Court has no jurisdiction over the discretionary decisions of the Board of Parole. See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7, 99 S. Ct. 2100, 2104 (1979) (inmates do not have a constitutional right to parole.); N.Y. Exec. Law § 259-i (investing decisions about parole in the board of parole, as a "judicial function and [] not reviewable if done in accordance with law."); Boddie v. N.Y. State Div. of Parole, No. 08-CV-0911 (KAM), 2009 WL 1033786, at *1 (E.D.N.Y. Apr. 17, 2009) ("[T]he court did not have the authority to subject parole conditions to judicial review without a showing that the parole board or its agents acted in an arbitrary and capricious manner."). Even if plaintiff could make out all else required for the grant of preliminary

injunctive relief, the Court is without subject matter jurisdiction to grant the relief requested. Such relief, consequently, is denied.

## CONCLUSION

For the reasons set forth above, all of plaintiff's claims against Broady are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B), and his order to show cause seeking a preliminary injunction and a temporary restraining order is declined, but the relief it seeks is denied.

In light of plaintiff's pro se status, the Court grants plaintiff leave to amend his claims for malicious prosecution and deliberate indifference to medical needs. The amended complaint shall be filed within 30 days of the date of this order. It must be captioned, "Amended Complaint," and shall bear the same docket number as this order. If Plaintiff has parole revocation or other documents available, he may attach copies as exhibits to the amended complaint. No summonses shall issue at this time, and all further proceedings shall be stayed for thirty (30) days. As the Court cannot now conclude that the claims are "likely to be of substance" at this juncture, see Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 204 (2d Cir. 2003), plaintiff's request for the appointment of pro bono counsel is dismissed without prejudice to renewal at a later date. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore in forma pauperis status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21 (1962).

**SO ORDERED.**

Dated: Brooklyn, New York
       August 5, 2010

                                        ERIC N. VITALIANO
                                        United States District Judge